IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **JERMARAE HERBERT,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:23-CV-00483-TES-CHW** |
| | : | |
| **CRISP COUNTY REGIONAL** | : | |
| **HOSPITAL, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

Presently pending before the Court is a *pro se* Complaint filed by Plaintiff Jermarae Herbert, an inmate in the Macon State Prison in Oglethorpe, Georgia, seeking relief pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff has also filed a motion to proceed *in forma pauperis* in this action (ECF No. 3). For the following reasons, Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**, and Plaintiff's claims that Defendants Smith and Sells were deliberately indifferent to his safety, that Defendant Sells was deliberately indifferent to Plaintiff's serious medical needs shortly after he was assaulted, and that Defendant Cowen was deliberately indifferent to Plaintiff's serious medical need for blood pressure treatment shall proceed for further factual development, as described in more detail herein. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff first seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a).   Plaintiff's submissions demonstrate that he is presently unable to pay the cost of commencing this action.   His application to proceed *in forma pauperis* (ECF No. 3) is therefore **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee.   28 U.S.C. § 1915(b)(1).   If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.   If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.   Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).   In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

### I.    Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.   The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration.   It is **ORDERED** that the warden of the institution wherein

2

Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.   28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.   It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### II.    Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.   Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.   The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.   Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.    Standard of Review

The PLRA obligates district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.   When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"  *Hughes*, 350 F.3d at 1160 (citation omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'"  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted).  The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'"  *Id.* (citation omitted).  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

4

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).    The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'"    *Twombly*, 550 U.S. at 555 (citation omitted).    In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."    *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.    *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.    *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

Plaintiff's claims arise from his incarceration in the Macon State Prison ("MSP"). Attach. 1 to Compl. 1, ECF No. 1-1.    According to the Complaint, Plaintiff was transferred from the Georgia State Prison Medical Housing Unit to MSP on November 2, 2021.    *Id.* Plaintiff suffers "with disabilities and was recovering from multiple previous injuries and surgeries," but he was transferred to MSP because Georgia State Prison was closing.    *Id.* Upon his arrival at MSP, Plaintiff contends MSP CERT officers "push[ed] and shov[ed]

inmates with force" against the wall.    Attach. 1 to Compl. 1, ECF No. 1-1.    Plaintiff states

that he and the other new arrivals to MSP "were forced to face the wall and to line their

feet up with painted footprints on the floor" and that CERT officers "acted

unprofessionally" and in violation of the GDC's standard operating procedures.    *Id.*

Plaintiff further states that two wardens, Defendants Smith and Sells, were present during

intake and "intentionally and deliberately allowed the (MSP) (CERT) team officers to act

outside of their policy while abusing their authority."    *Id.*    In addition, Plaintiff contends

CERT officers "began illegally taking the plaintiff and other new inmate arrivals personal

belongings and disposing of them."    *Id.*    Plaintiff's complaints about the officers'

handling of his property were largely ignored.    *Id.*

Plaintiff was then taken to the MSP medical unit for intake screening.    Attach. 1 to

Compl. 1, ECF No. 1-1.    During this process, medical staff generally takes new inmates'

vital signs and "reviews the medical files of new inmates to become familiar with new

inmate arrivals' medical history."    *Id.*    Plaintiff contends that Wellpath Medical Group—

apparently the entity contracted to provide medical care at MSP—thus "became aware of

the plaintiff's conditions including chronic illness and surgery received at the previous

institution (GSP) months prior to being transferred to (MSP)."    *Id.*    Plaintiff further states

that his "injuries were visible at all times during the medical intake at (MSP)."    *Id.*

After the medical assessment, Plaintiff was returned to the intake room to await his

housing assignment.    Attach. 1 to Compl. 1, ECF No. 1-1.    Defendant White, a CERT

officer, returned with other officers to the intake room to escort Plaintiff and the other new

6

arrivals to their dormitories. *Id.* at 2. Plaintiff alleges that Defendant White "threatened" Plaintiff by telling him, "I got something for you" and then escorting Plaintiff to the D1 dormitory. *Id.* According to Plaintiff, the D1 dormitory "was the most violent and dangerous housing unit at (MSP)." *Id.* The unit was significantly understaffed, and "[d]ays passed when there were no officers present in D1 Dormitory or any supervisors in the control station for hours at a time." *Id.* Plaintiff immediately felt unsafe in D1 "due to his disabilities and injuries restricting him from being able to protect himself." *Id.* Plaintiff complained to Defendants Smith and Sells, and he "requested numerous times to be moved to an (ADA) dormitory with other inmates who have disabilities and medical conditions." *Id.* Plaintiff also states that "he requested if there was not an available unit in the ADA dormitory, to simply be moved to a safer dormitory or medical unit due to his injuries and disabilities and lack of supervision in D1 dormitory." *Id.* Plaintiff contends Defendants Smith and Sells "deliberately ignored" his requests, and he "was forced to stay in D1 dormitory." *Id.* Plaintiff's family also filed complaints about Plaintiff's housing assignment, and Plaintiff raised his complaints at a classification hearing with MSP staff members. *Id.*

On December 1, 2021, Plaintiff was attacked in his cell "in D1 dormitory while there were no officers or correctional supervisors present." Attach. 1 to Compl. 3, ECF No. 1-1. Plaintiff was "brutally beaten unconscious by several unknown inmates" and "assaulted with unidentified weapons and objects that left wounds and abrasions on the plaintiff's body, damage to the skull, face and spine." *Id.* Plaintiff states there were no

officers present to intervene in the attack. *Id.* Following the assault, Plaintiff "was snatched off the floor, placed in handcuffs and was dragged to the medical unit by (MSP) officers." *Id.* Defendant Cowen, the prison doctor, advised Defendant Sells that Plaintiff needed to "go to the emergency room 'now' immediately." *Id.* Instead of calling an ambulance, Defendant Sells ordered prison staff to drive Plaintiff to the hospital. *Id.* Plaintiff was thus "tossed in a (MSP) van and driven to Crisp County Regional Hospital in Cordele, GA approximately 42 minutes away from Macon State Prison." *Id.*

Once Plaintiff arrived at the hospital, he was "seen by nurses and doctors," and he was given an MRI and "numerous tests . . . to try and detect the severity of the assault." Attach. 1 to Compl. 3, ECF No. 1-1. Plaintiff was ultimately "released from Crisp County Regional Hospital without monitoring after receiving a diagnosis of a concussion." *Id.* Hospital staff advised the MSP officers who escorted Plaintiff that he would require monitoring and follow-up care for "serious head injuries," but hospital staff failed to provide Plaintiff with "any durable medical equipment such as a brace to provide neck/spinal support for the plaintiff's injuries." *Id.*

Upon his return to MSP, Plaintiff was placed in the segregation lockdown unit where he was "confused and in pain . . . for days," and "unable to see the doctor to receive medicine and have bandages changed." Attach. 1 to Compl. 4, ECF No. 1. Plaintiff did not see prison medical staff until December 6, 2021. *Id.* At this time, Plaintiff was "informed by nurses that his blood pressure was so elevated he could have had a stroke." *Id.* The nurses also advised Plaintiff that the increase in his blood pressure was likely

caused by his pain and "not properly receiving his blood pressure medication or pain medication prescribed by doctors at Crisp Regional Hospital." *Id.* Plaintiff was given blood pressure medication with a sedative effect that helped him "feel relaxed and fall asleep while lowering blood pressure," and he was sent back to the segregation unit. *Id.* Plaintiff did not receive any additional treatment for more than two weeks, though he continued to request treatment because he was "feeling sick and in constant pain." *Id.*

On December 21, 2021, Plaintiff filed a grievance with Wellpath for failing to treat his injuries and chronic illness. Attach. 1 to Compl. 5, ECF No. 1-1. The next day, Plaintiff received "an excessive amount of ibuprofen with instructions to take 800mg pills three times a day for pain" and blood pressure medication. *Id.* Plaintiff also requested to see a specialist because he was still experiencing headaches, difficulty sleeping, and "feeling unbalanced when trying to walk." *Id.* On or about January 5, 2022, Plaintiff spoke with a mental health counselor who prescribed Zoloft to help with sleeping and headaches. *Id.*[1] Plaintiff was ultimately released from segregation in February of 2022 and was "placed in a dormitory that was more supervised and suitable for inmates with disabilities and illnesses," which is where Plaintiff believes he should have been housed from the outset. *Id.*

On March 28, 2022, Plaintiff was taken to medical after complaining about being

---

[1] Plaintiff that he was prescribed Zoloft in January of 2021 and released from segregation in February of 2021, Attach. 1 to Compl. 5, ECF No. 1-1, but the Court assumes these events actually happened in early 2022.

dizzy. Attach. 1 to Compl. 5, ECF No. 1-1. He later passed out, and his blood pressure was 186/126. *Id.* Plaintiff was scheduled for an electrocardiogram and radiology tests on March 30, 2022, but "no one came to take plaintiff to the appointment." *Id.* When Plaintiff also asked why he had not yet received a neck brace or other durable medical supplies, he was told Wellpath never ordered them. *Id.*

On March 30, 2022, Plaintiff saw Defendant Cowen. Attach. 1 to Compl. 5, ECF No. 1-1. Plaintiff stated that he was still in pain from the assault and that his blood pressure reading was 175/116, but Defendant Cowen told Plaintiff, "[Y]ou have other things to worry about." *Id.* When Plaintiff tried to explain "his level of stress, chronic headaches and all over body pain," Defendant Cowen "got very upset" and told Plaintiff to leave. *Id.* Plaintiff states he did not receive any further treatment despite his "blood pressure being at stroke level." *Id.* On July 13, 2022, Plaintiff saw another nurse who told Plaintiff that his "injuries were serious enough for the plaintiff to be placed [in] physical therapy," but he never received this therapy. *Id.* Plaintiff also alleges that he "began to receive higher and excessive dosages of medication" and that he was given a 30-day blister pack of Zoloft in addition to his daily Zoloft, which violated GDC policy. *Id.* Plaintiff contends his prescribed dosage of Zoloft caused him to experience "excessive tiredness, hallucinations, agitation as well as nausea." *Id.* He also alleges that his prescribed dosage of ibuprofen caused him to experience "stomach pain, nausea, vomiting, and diarrhea." *Id.*

10

In sum, Plaintiff contends that Defendants' actions and inaction violated his constitutional rights.   As a result of these alleged violations, Plaintiff seeks "compensation for injuries."   Compl. 6, ECF No. 1.

### III.   Plaintiff's Claims

   A.   Claims against Defendants Wellpath and Crisp County Regional Hospital

As a preliminary matter, Plaintiff names two entities as Defendants in this action: Wellpath and Crisp County Regional Hospital.   The Court will assume without deciding that these are proper Defendants under § 1983 and should be treated as municipalities for purposes of Plaintiff's claims.   *See, e.g., Wofford v. Glynn Brunswick Mem. Hosp.*, 864 F.2d 117, 118 (11th Cir. 1989) (per curiam) (actions of hospital that was public hospital authority created under Georgia law "constitute states acts within the meaning of § 1983"); *see also Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993) (noting that a private hospital may subject to § 1983 liability "'if its activities are significantly affected with state involvement'" (quoting *Greco v. Orange Mem. Hosp. Corp.*, 513 F.2d 873, 877 (5th Cir. 1975), *cert. denied*, 423 U.S. 1000 (1975))); *Connor v. Halifax Hosp. Med. Ctr.*, No. 01-16207, 2002 WL 32290997, at *4 (11th Cir. June 26, 2012) (per curiam); *see also Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam) (holding that when a private corporation contracts with the county to provide medical services to inmates, the entity should be treated as a municipality).   Nevertheless, to the extent Plaintiff wishes to sue these entities themselves, he has failed to state an actionable claim.   An entity cannot

11

"be liable under § 1983 for the actions of its employees on a theory of respondeat superior." *Connor*, 2002 WL 32290997, at *4 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)).    Rather, the entity can only be liable "if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law."    *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 (11th Cir. 2000).    This "'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."    *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

In this case, Plaintiff has not alleged that either Wellpath or Crisp County Regional Hospital maintained any policy or custom that resulted in the denial of Plaintiff's constitutional rights.    As such, Plaintiff has failed to state an actionable claim against these Defendants, and all such claims should be dismissed.[2]

---

[2] To the extent that Plaintiff intended to sue any of the individual providers at Crisp County Regional Hospital, he has not pleaded facts sufficient to show that any of these individuals were deliberately indifferent to Plaintiff's serious medical needs.    Plaintiff alleges he was seen by doctors and nurses at the facility and given an MRI and "numerous" other tests "to try and detect the severity of the assault[.]"    Attach. 1 to Compl. 3, ECF No. 1-1. Providers diagnosed Plaintiff with a concussion and directed prison officials to monitor Plaintiff and follow up with prison medical staff.    *Id.*    Although Plaintiff states that hospital staff did not provide him with any sort of a brace to support his neck, this failure amounts to a mere difference of medical opinion, which does not amount to deliberate indifference.    *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

B.   Claims against Defendant Ward

Plaintiff has also named former GDC Commissioner Timothy Ward as a Defendant in this case.   Plaintiff does not allege that Defendant Ward personally participated in any of the events described in the Complaint; rather, Plaintiff appears to seek to hold Defendant Ward liable in his capacity as the GDC's commissioner.   *See* Attach. 1 to Compl. 6, ECF No. 1-1.   Plaintiff states that the GDC (and presumably Defendant Ward) were deliberately indifferent to his safety "by changing his classification status and moving him to a maximum-security prison that is understaffed and known for violence while suffering from known injuries."   *Id.*[3]

It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.   *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).   Rather, supervisors can only be held liable under § 1983 if they personally participated in unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation.   *See, e.g., Hendrix v. Tucker*, 535 F. App'x

---

[3] To the extent Plaintiff intended to raise these claims against the GDC itself, the GDC is a state entity entitled to Eleventh Amendment immunity.   *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections . . . .   This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983).   Any claims against the GDC itself are thus subject to dismissal.

803, 805 (11th Cir. 2013) (per curiam).   A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.*   "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."   *Id.* (internal quotation marks omitted). Plaintiff has not alleged facts sufficient to show there has been a history of similar incidents at the prison, an improper custom or policy, or that Defendant Ward directed his subordinates to act unlawfully or knew they were doing so.   Plaintiff has therefore failed to state an actionable claim against Defendant Ward, and any such claims should be dismissed.

## C.   Claims Arising During Intake Proceedings

### 1.   *Excessive Force Claims*

Plaintiff also raises claims against individuals whom he alleges personally violated his constitutional rights.   Plaintiff first contends CERT officers "intentionally violated" his rights by "pushing and shoving [him] with force" during intake.   Attach. 1 to Compl. 1, ECF No. 1-1.   Plaintiff contends that Defendants Smith and Sells observed this conduct and did nothing to prevent it.   *Id.*   Plaintiff may thus be attempting to assert that these Defendants' use of excessive force violated the Eighth Amendment.   *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

14

When prison officials are accused of using excessive force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.   But not "every malevolent touch by a prison guard gives rise to a federal cause of action."   *Id.* at 9.   Rather, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."   *Id.* at 9-10 (internal quotation marks and citations omitted). Thus, "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim*."   Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (internal quotation marks omitted).   At the same time, however, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* Therefore, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."   *Id*.

In this case, Plaintiff has not alleged facts sufficient to show that any push or shove he experienced during intake constituted more than *de minimis* force and has not alleged that he suffered any discernible injury.   A push or shove is not the type of force that is "repugnant to the conscience of mankind."   *Hudson*, 503 U.S. at 510.   Instead, Plaintiff's allegations fall squarely within the description of complaints that the Supreme Court has held "almost certainly fail[] to state a valid excessive force claim."   *Wilkins*, 559 U.S. at

38; *see also Smith v. Sec'y, Dep't of Corrs.*, 524 F. App'x 511, 514 (11th Cir. 2013) (per curiam) (affirming grant of summary judgment on Eighth Amendment claims against prison guard accused of twisting inmate's arm and pressing him against a wall because guard did not use more than *de minimis* force).   Plaintiff's Eighth Amendment excessive force claims should therefore be dismissed.

### 2.   Property Loss Claims

Plaintiff next alleges that CERT officers "illegally" seized and disposed of Plaintiff's personal belongings.   Attach. 1 to Compl. 1, ECF No. 1-1.   Although Plaintiff alleges that an intake officer helped him recover at least some of this property, it appears that his remaining property was lost or otherwise disposed of.   *Id.* at 1-2.

To the extent Plaintiff is alleging that the loss of his property violated his due process rights, he has failed to state an actionable constitutional claim.   Even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).   "Georgia provides a civil cause of action for the wrongful conversion of personal property." *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) (per curiam) (citing O.C.G.A. § 51-10-1).   The Eleventh Circuit has "held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations." *Id.*   Plaintiff has not alleged that he has attempted to pursue a civil action based on Defendants' actions or that such a remedy is not available to him.   He has

therefore failed to state a due process claim concerning the loss of his personal property, and any such claim he is attempting to assert in this action should be dismissed.

### 3. Grievance Procedure Claims

Plaintiff also suggests that prison staff "deliberately ignored" at least some of his requests to file grievances or failed to provide him with the requisite forms. Attach. 1 to Compl. 1, ECF No. 1-1. These allegations also fail to state an actionable constitutional claim. Plaintiff does not have any due process right to access a prison's grievance procedure or have those procedures properly followed. *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam) (affirming dismissal of prison's claims that he was denied use of the prison's grievance procedure); *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (per curiam) (prison officials' failure to respond to prisoner's letters and grievances and to follow prison regulations regarding grievance responses did not implicate due process concerns). Any such claims Plaintiff is attempting to raise in this action should therefore be dismissed without prejudice.

### D. Deliberate Indifference to Safety Claims

Plaintiff next alleges that prison officials were deliberately indifferent to his safety when they placed him in the D1 dormitory and that this deliberate indifference led to the December 1st assault and the resulting injuries. This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner asserting an Eighth Amendment deliberate indifference to safety claim must allege (1) a substantial risk of serious harm;

(2) the prison officials' deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk. *Id.* at 1332.

The subjective component of deliberate indifference requires a prisoner to allege facts showing that a prison official had "'more than a generalized awareness of risk'" to the prisoner. *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)). The inmate can do this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). The objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Id.* (internal quotation marks omitted).

In this case, Plaintiff's claims appear to be based on Defendants' awareness of a specific threat to Plaintiff's safety. Plaintiff has alleged facts suggesting that Defendants Smith and Sells, both of whom were wardens at MSP, (1) knew MSP was significantly

18

understaffed, Attach. 1 to Compl. 2, ECF No. 1-1, (2) had seen Plaintiff's "visible" injuries at intake, *id.* at 1, (3) received "numerous" complaints and requests for a transfer from Plaintiff because he felt unsafe in D1 and was unable to protect himself due to his "injuries and disabilities," *id.* at 2, and (4) received complaints from Plaintiff's family and friends expressing concern for Plaintiff's safety, *id.*   Despite this knowledge, Plaintiff contends Defendants Smith and Sells took no action to modify his placement, and Plaintiff was ultimately attacked and suffered significant injuries.   These allegations are sufficient at this early stage to permit Plaintiff's Eighth Amendment claims against Defendants Smith and Sells to proceed for further factual development.[4]

Plaintiff also appears to suggest that Defendant J. White, a CERT team sergeant, was deliberately indifferent to Plaintiff's safety because he "threatened" Plaintiff as Plaintiff was "getting ready to exit the intake room" by saying "I got something for you." Attach. 1 to Compl. 2, ECF No. 1-1.   Plaintiff alleges that other officers then escorted Plaintiff to D1.   *Id.*   These allegations are too vague and conclusory to establish that Defendant White was deliberately indifferent to Plaintiff's safety.   It is not at all clear that Defendant White was talking about Plaintiff's housing placement, nor is it clear that Defendant White had any authority to assign Plaintiff to a different dormitory.   As such, Plaintiff's Complaint, as pleaded, does not state a deliberate indifference claim against

---

[4] To the extent that Plaintiff is alleging prison officials failed to press charges against his attackers, he cannot state a constitutional claim.   *See e.g., Oliver v. Collins,* 904 F.2d 278, 281 (5th Cir.1990) ("The decision to file or not file criminal charges falls within [the] category of acts that will not give rise to [civil rights] liability.").

Defendant White.   *See, e.g., LaMarca v. Turner*, 995 F.2d 1526, 1535-36 (11th Cir. 1993) (noting that "to demonstrate an official's deliberate indifference, a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition").   Any such claim Plaintiff intended to plead should therefore be dismissed.

E.   <u>Failure to Provide Adequate Medical Care</u>

Plaintiff next alleges he did not receive adequate medical care at Macon State Prison and that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.   *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry." *Id.* at 1243.   A plaintiff must first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need."   *Id.*   In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner."   *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).   A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).   A serious medical need can also arise if "a delay in treating the need worsens the condition."   *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).   "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'"   *Id.* (quoting *Farrow*, 320 F.3d at 1243).

20

### 1.   *Failure to Assign Plaintiff to Medical Unit*

Plaintiff first suggests that Defendants' failure to assign him to a medical unit constituted deliberate indifference to Plaintiff's serious medical needs.   *See, e.g.,* Attach. 1 to Compl. 2, ECF No. 1-1.   Plaintiff alleges he had "chronic illness" and had received surgery "months before being transferred" to Macon State Prison.   *Id.*   Plaintiff attaches a grievance to his Complaint in which he states that he suffered from "high blood pressure, mild concussion, headaches, back pains, shoulder pain, nose bleeds, 2 pins in right hip, 9 pins in left wrist and plate, left side sore, left leg swollen & stab wounds, stab wounds in face and head, back, equilibrium off need crutches."   Attach. 4 to Compl. 2, ECF No. 1-4. It is apparent that at least some of these conditions resulted from the December 1st attack against him, and prison officials would not have assessed these conditions in determining whether Plaintiff needed to be housed in a medical unit.   With respect to the remaining conditions, Plaintiff has not pleaded how they constitute objectively serious medical needs. Plaintiff does not describe his symptoms, allege that any medical professional had directed that he be assigned to a particular medical unit or dormitory, or explain why assignment to a medical unit was medically necessary.   Absent such supporting facts, Plaintiff has failed to allege that Defendants were deliberately indifferent to his serious medical needs by placing him in the D1 dormitory.[5]

---

[5] Even if assignment to a medical unit was not medically necessary, assignment to a different unit may have been necessary in the context of Plaintiff's deliberate indifference to safety claims, as explained above.

2.    *Failure to Provide Adequate Medical Care Shortly after December 1st Assault*

Next, Plaintiff alleges that prison officials were deliberately indifferent to the injuries he suffered in the December 1st assault in the period shortly after the assault occurred.   Attach. 1 to Compl. 3, ECF No. 1-1.   Plaintiff first alleges that Defendant Cowen, the prison doctor, told Defendant Sells that Plaintiff needed to go to the emergency room "immediately."   *Id.*   Rather than call an ambulance, Defendant Sells decided to have prison officials drive Plaintiff to the hospital, which took approximately 42 minutes. *Id.*   To the extent that Plaintiff is alleging Defendants Cowen and Sells were deliberately indifferent to Plaintiff's serious medical needs at this time, he has failed to state an actionable claim.   Plaintiff alleges he suffered from "multiple abrasions and [a] concussion."   *Id.*   While these injuries could be considered serious medical needs, Plaintiff has not alleged that Defendants Cowen or Sells were deliberately indifferent to them.   Defendant Cowen saw Plaintiff "immediately," evaluated Plaintiff's condition, and recommended that Plaintiff be transported to "an outsider medical facility for emergency treatment."   *Id.*   For his part, Defendant Sells promptly arranged for transportation to a hospital.   *Id.*   Although Plaintiff takes issue with Defendant Sells' decision to transport Plaintiff via prison van rather than wait for ambulance transportation, Plaintiff has not alleged any facts suggesting that this decision was unreasonable or that it in any way hindered Plaintiff's treatment or exacerbated his injuries.   These claims should therefore be dismissed without prejudice.

22

Plaintiff also alleges he did not receive adequate medical treatment for the injuries suffered in the December 1st attack when he returned to Macon State Prison because he was placed in a lockdown unit where he remained for five days without medical attention. Attach. 1 to Compl. 4, ECF No. 1-1.   Plaintiff contends he "questioned prison staff for days" requesting to see a doctor for medication and bandage changes. *Id.*   When he was finally seen, his blood pressure was so elevated that "he could have had a stroke." *Id.*   He also alleges medical providers told him this increase in blood pressure was due to the pain he was experiencing. *Id.*   Serious pain that is not promptly or adequately treated can be considered a serious medical need. *See Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) ("Under our case law, a reasonable jury could find that [prisoner's] severe pain and suffering constituted a serious medical need.").   At the same time, however, "a plaintiff's statement that he experienced some pain or discomfort is not enough; the prisoner's pain must be objectively so severe that the failure to treat it deprives him of the minimal civilized measure of life's necessities." *Brennan v. Thomas*, 780 F. App'x 813, 820 (11th Cir. 2019) (per curiam) (internal quotation marks omitted).   Plaintiff has met this standard by alleging that his pain shortly after the attack was so severe that it caused a significant spike in his blood pressure.   Although Plaintiff does not clearly allege which of the named Defendants failed to provide him with adequate medical care for his pain, he does allege that Defendant Sells knew he was in segregation and that he complained to Defendant Sells about these injuries on December 2, 2021, the day after the assault.   Plaintiff also alleges Defendant Sells returned him to segregation without taking any additional action despite

23

these complaints.   Attach. 1 to Compl. 4, ECF No. 1-1.   The Court will therefore permit this claim against Defendant Sells to go forward for further factual development.

### 3. Failure to Provide Adequate Medical Care for Chronic Issues

Plaintiff next claims he was not treated properly "for his injuries and chronic illness" even after the period shortly following the attack.   Attach. 1 to Compl. 5, ECF No. 1-1; *see also id.* at 6 ("As of today, the Plaintiff still suffers with injuries and pain from the December 1, 2021 assault.").   Specifically, Plaintiff alleges he had three issues with his medication: (1) he was prescribed excessive ibuprofen; (2) he was prescribed excessive Zoloft; and (3) he was given a blister pack amounting to 30-days' supply of Zoloft during medication call, which contravened GDC policy.   *Id.* at 5-6.   Plaintiff also alleges that his prescriptions caused him to suffer symptoms to include "excessive tiredness, hallucinations, agitation as well as nausea."   *Id.* at 6.

Plaintiff does not state which individual medical providers were responsible for prescribing or providing these medications, but even if he had, he has failed to state an actionable claim.   To the extent that Plaintiff is alleging that medical staff violated GDC policy by providing him with an entire blister pack of medication, "[f]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."   *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000). And to the extent that Plaintiff is alleging that his prescriptions were too strong, "a simple difference in medical opinion" is not deliberate indifference.   *Waldrop*, 871 F.2d at 1033. Plaintiff acknowledges that he had conditions that the pain medication and Zoloft were

intended to treat, and he further alleges medical professionals were responsive to his complaints of stomach pain and prescribed him additional food to help mitigate any stomach pain he was experiencing from taking ibuprofen.  *Id.*  Plaintiff also fails to describe any injuries that are still not being treated and does not provide any factual allegations to show that any pain he still experiences amounts to a serious medical need.  *See Brennan*, 780 F. App'x at 820.  In sum, all Plaintiff has alleged is that his opinion as to his treatment differed from that of his providers, and that providers may have violated a GDC policy.  Neither of these allegations amount to deliberate indifference, and these claims should therefore be dismissed.

Plaintiff additionally alleges that Defendant Cowen did not provide him with adequate treatment for high blood pressure.  Attach. 1 to Compl. 5, ECF No. 1-1. Plaintiff has alleged that although he is taking medication for high blood pressure, his readings remain quite high, he has "blacked out" at least once due to this condition, and he is currently experiencing symptoms such as headaches that may be attributed to high blood pressure.  *Id.*  Plaintiff alleges that he had an appointment with Defendant Cowen on May 5, 2022, where he advised Defendant Cowen of these symptoms and where his blood pressure was still "high" or at "stroke level" despite his medication regimen.  *Id.*  Plaintiff states that Defendant Cowen did not provide Plaintiff with any treatment at this appointment.  *Id.*  The "[f]ailure to respond to a known medical problem" or a "doctor's decision to take an easier and less efficacious course of treatment" may constitute deliberate indifference.  *See, e.g., Waldrop*, 871 F.2d at 1033.  At this early stage,

Plaintiff's claims that Defendant Cowen has been deliberately indifferent to Plaintiff's blood pressure are sufficient to proceed for further factual development.

## IV.   Conclusion

As discussed herein, Plaintiff's motion for leave to proceed *in forma pauperis* in this action (ECF No. 3) is **GRANTED**, and Plaintiff's claims that Defendants Smith and Sells were deliberately indifferent to his safety, that Defendant Sells was deliberately indifferent to Plaintiff's serious medical needs after he was assaulted and returned to the prison, and that Defendant Cowen was deliberately indifferent to Plaintiff's serious medical need for blood pressure treatment shall proceed for further factual development. It is **RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Smith, Sells, and Cowen, it is accordingly **ORDERED** that service be made on these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.   The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action,

absent the filing of a motion therefor accompanied by a brief/memorandum of law citing

supporting authorities.   Dispositive motions should be filed at the earliest time possible,

but in any event no later than one hundred - twenty (120) days from when the discovery

period begins unless otherwise directed by the Court.

    **SO ORDERED AND RECOMMENDED**, this 14th day of February, 2024.


               s/ Charles H. Weigle
               Charles H. Weigle
               United States Magistrate Judge